**2017 BNH 002**      **Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**
_____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                          Bk. No. 14-11623-BAH
                                                                                Chapter 7
David L. Burrows and
Lisa M. Burrows,
                Debtors

Holly Kirk,
                Plaintiff

v.                                                                              Adv. No. 15-1010-BAH

David L. Burrows,
                Defendant


*Bryan W. Clickner, Esq.*
*Goffstown, New Hampshire*
*Attorney for Plaintiff*

*Peter V. Doyle, Esq.*
*Shaines & McEachern, P.A.*
*Portsmouth, New Hampshire*
*Attorney for Defendant*


### MEMORANDUM OPINION

## I.  INTRODUCTION

Holly Kirk ("Kirk" or the "Plaintiff") filed a complaint (Doc. No. 1) (the "Bankruptcy

Complaint"), which seeks in part to except from discharge pursuant to 11 U.S.C. § 523(a)(2)(A)

and/or (a)(6) a debt she alleges David Burrows ("Burrows" or the "Defendant" or the "Debtor")

owes her arising from her employment as a sales consultant pursuant to a contract with the

Debtor's company, Direct Wholesale International, Inc. ("DWI").[1]  Kirk contends that she sold

DWI's products fulfilling her obligations under the contract but that Burrows and DWI failed to

pay her in full the commissions and expenses she was owed.   Kirk filed an amended complaint

(the "California Complaint") in the Superior Court of the State of California (the "California

Court") and obtained a default judgment against Burrows and DWI in the amount of $743,184.81

(the "Default Judgment").  Kirk has filed a motion for summary judgment in this non-

dischargeability proceeding contending that the Debtor is barred from re-litigating any issue

decided by the California Court based upon collateral estoppel, otherwise known as issue

preclusion (Doc. No. 91) (the "Motion").  She argues that the collateral estoppel effect of the

Default Judgment against the Debtor, as applied to the facts of this case, entitles her to judgment

as a matter of law on the remaining counts of the Bankruptcy Complaint.  The Court has

jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and

Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is

a core proceeding in accordance with 28 U.S.C. § 157(b).


## II.  DISCUSSION

### A.  Summary Judgment Standard

In bankruptcy, summary judgment is governed by Federal Rule of Bankruptcy Procedure

7056, which incorporates Federal Rule of Civil Procedure 56 and its standards into bankruptcy

practice.  Weiss v. Wells Fargo Bank, N.A. (In re Kelley), 498 B.R. 392, 397 (B.A.P. 1st Cir.

2013) (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994)); Fed. R.

Bankr. P. 7056; Fed. R. Civ. P. 56.  Rule 56(a) provides that a movant is entitled to summary

---

[1]  The Bankruptcy Complaint also sought to except the debt from discharge pursuant to 11 U.S.C. §
523(a)(4).  The Court previously granted judgment to the Defendant on that claim.  Doc. No. 54.

judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)). In assessing the summary judgment record, a court must draw all reasonable inferences in favor of the non-moving party but is "not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party." Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008); see Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014). The Supreme Court has explained that "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

### B. Collateral Estoppel Law

The Plaintiff contends that the Defendant is estopped from denying any of the allegations in the California Complaint in this bankruptcy proceeding because the State of California accords collateral estoppel effect to default judgments. Courts have held that "[t]he ordinary rules of collateral estoppel and res judicata apply in most actions in the bankruptcy court,

---

[2] Rule 56 was amended in 2010; however, the standard has not changed. Barton v. Clancy, 632 F.3d 9, 16 n.5 (1st Cir. 2011) (citing the advisory committee notes which state that "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute'"); see also Newell Rubbermaid, Inc. v. Raymond Corp., 676 F.3d 521, 533 (6th Cir. 2012) ("The commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary judgment standard."). Accordingly, case law construing the prior version of Rule 56 is still applicable.

including adversary proceedings under § 523(a) to except debts from discharge."  McCory v.

Spigel (In re Spigel), 260 F.3d 27, 33 (1st Cir. 2001) (citing Grogan v. Garner, 498 U.S. 279, 284

n.11 (1991); FDIC v. Shearson-American Express, Inc., 996 F.2d 493, 497 (1st Cir. 1993)); see

Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001); Baldwin v. Kilpatrick

(In re Baldwin), 249 F.3d 912, 917 (9th Cir. 2001); Backlund v. Stanley-Snow (In re Stanley-

Snow), 405 B.R. 11, 18 (B.A.P. 1st Cir. 2009); Chapman v. Tracey (In re Tracey), 250 B.R. 468,

471 (Bankr. D.N.H. 2000).  Bankruptcy courts must look to state law to determine the preclusive

effect of a prior state court judgment.  Spigel, 260 F.2d at 33 (citing New Hampshire Motor

Transp. Ass'n v. Town of Plaistow, 67 F.3d 326, 328 (1st Cir. 1995)); Harmon, 250 F.3d at

1245; Baldwin, 249 F.3d at 917; Stanley-Snow, 405 B.R. at 18 (citing Marrese v. Am. Academy

of Orthopaedic Surgeons, 470 U.S. 373 (1985) (stating the "full faith and credit" statute of 28

U.S.C. § 1738 "directs a federal court to refer to the preclusion law of the State in which the

judgment was rendered.")).  Because Kirk's Default Judgment was issued in California, the

Court must look to California law to determine its preclusive effect.

"Most jurisdictions do not consider a default judgment to be capable of satisfying the

requirements for the application of issue preclusion."  Tolotti v. Seaboard Produce Distribs., Inc.

(In re Tolotti), BAP No. CC-14-1019-TaPaKi, 2014 WL 4197847, at *5 (B.A.P. 9th Cir. Aug.

25, 2014).  In California, however, "[c]ollateral estoppel precludes relitigation of issues argued

and decided in prior proceedings," Lucido v. Superior Court, 795 P.2d 1223, 1225 (1990) (cited

in Harmon, 250 F.3d at 1245); the mere fact that a judgment was obtained by default does not

foreclose the possibility that issue preclusion may later apply, Harmon, 350 F.3d at 1247.

"California courts will apply collateral estoppel only if certain threshold requirements are met,

and then only if application of preclusion furthers the public policies underlying the doctrine."

Id. at 1245; see Baldwin, 249 F.3d at 917.  The five threshold requirements are:

4

1.  The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.

2.  This issue must have been actually litigated in the former proceeding.

3.  It must have been necessarily decided in the former proceeding.

4.  The decision in the former proceeding must be final and on the merits.

5.  The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Harmon, 250 F.3d at 1245; Baldwin, 249 F.3d at 917-18.  The party who asserts collateral estoppel bears the burden of establishing these requirements.  Harmon, 250 F.3d at 1245; Baldwin, 249 F.3d at 918.  "This means providing 'a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.'"  Tolotti, 2014 WL 4197847, at *4 (quoting Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (B.A.P. 9th Cir. 1995), aff'd, 100 F.3d 100 (9th Cir. 1996)).  In addition to the five threshold requirements, in the context of a default judgment, California law imposes a notice requirement.  Baldwin, 249 F.3d at 918-19.  Further, the defendant must have had a "full and fair opportunity to litigate."  Tolotti, 2014 WL 4197847, at *5 (quoting Cal-Micor, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1123-24 (9th Cir. 2003) (citing Harmon, 250 F.3d at 1247 n.6)).

And, even if all five threshold requirements are satisfied, "California courts will not give preclusive effect unless they find that the public policies underlying the collateral estoppel doctrine would be furthered by application of preclusion to the particular issue before the court."  Baldwin, 249 F.3d at 919 (citing Lucido, 795 P.2d at 1226).  Public policies underlying the doctrine of collateral estoppel include "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation."  Baldwin, 249 F.3d at 919-20 (quoting Lucido, 795 P.2d at 1227).

### C.  Summary Judgment Record

It is undisputed that Kirk filed the California Complaint against the Debtor and his company, DWI, in the California Court in 2013.  The California Complaint asserted nine causes of action:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) account stated; (4) open book account; (5) services rendered; (6) intentional misrepresentation; (7) negligent misrepresentation; (8) intentional infliction of emotional distress; and (9) unjust enrichment.  Kirk sought (1) an award of damages legally and/or proximately caused by Burrows' and DWI's breaches of the contract, including general, compensatory, and special damages in the amount of $74,999.99; (2) consequential and incidental damages, including, without limitation, costs of expert consultation and costs of investigation according to proof; (3) pre-judgment and post-judgment interest at the maximum rate according to statute at the rate of 10% percent per year from and after May 2009; (4) an award of attorney's fees incurred; (5) an award of costs of suit incurred; and (6) an award of punitive damages.

After commencement of the case, the parties participated in discovery.  Ultimately, however, Burrows failed to comply with a court order regarding discovery, which resulted in the California Court striking his answer and entering default against him and DWI on May 30, 2014.  Thereafter, Kirk requested entry of a default judgment.  In support of that request, she submitted a declaration signed by her attorney, but not by Kirk herself.  The California Court issued the Default Judgment on July 10, 2014.  The Default Judgment did not contain any factual findings or conclusions of law; rather, a box was simply checked on the California judgment form indicating judgment was issued "by default" against Burrows and DWI, "jointly and severally."  The Default Judgment provided an award of (1) damages of $74,999.99; (2) pre-judgment interest at the annual rate of 10% in the amount of $37,993.15; (3) attorney's fees of

6

$120,720.00; (4) costs of $4,471.70; and (5) other damages, described as "Punitives/Specials," of $504,999.97, for a total award of $743,184.81.

On August 21, 2014, the Debtor filed a chapter 7 bankruptcy petition in New Hampshire. On November 10, 2014, the Debtor amended his schedules to add Kirk as a general unsecured creditor owed $600,000.00; the Debtor listed Kirk's claim as disputed.  On February 6, 2015, Kirk filed this non-dischargeability proceeding, contending that the debt the Defendant owes to her is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6) "because the debt was incurred through fraud, fiduciary misconduct, larceny or embezzlement, and willful and malicious injury."  As previously noted, on January 28, 2016, the Court granted judgment in favor of the Defendant with respect to Kirk's claim under § 523(a)(4), leaving only Kirk's claims under § 523(a)(2)(A) and (a)(6) to be litigated.

### D.  Bankruptcy Claims

#### 1.  523(a)(2)(A)

Kirk contends that the sixth cause of action in the California Complaint for "intentional misrepresentations" is comparable to § 523(a)(2)(A) and, therefore, she is entitled to judgment on this count in the Bankruptcy Complaint.  As set forth above, to establish collateral estoppel, Kirk must demonstrate the following:

1. The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.

2. This issue must have been actually litigated in the former proceeding.

3. It must have been necessarily decided in the former proceeding.

4. The decision in the former proceeding must be final and on the merits.

5. The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

7

The Debtor does not challenge that he was a defendant in Kirk's state court action or that the

Default Judgment was final before Kirk brought her non-dischargeability action.  Thus, no

dispute exists as to the fourth and fifth requirements for applying collateral estoppel.  At issue is

whether the first three requirements are met.

### a. Identical Issue

The Court has recently described the requirements to except a debt from discharge

pursuant to § 523(a)(2)(A):

> Section 523(a)(2)(A) of the Bankruptcy Code exempts from discharge any debt "for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud. . . ."  11 U.S.C. § 523(a)(2)(A).  To establish that a debt is nondischargeable under this subsection, a creditor must show that:
>
>> 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage.
>
> McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001) (citing Palmacci, 121 F.2d at 786) (footnote omitted); see Levasseur v. Old Republic Nat'l Title Ins. Co. (In re Levasseur), 737 F.3d 814, 818 (1st Cir. 2013); Sharfarz v. Goguen (In re Goguen), 691 F.3d 62, 66 (1st Cir. 2012).  "The first two elements of the test describe the conduct and scienter required to show fraudulent conduct, while the last four elements embody the requirement the creditor's claim must arise directly from the debtor's fraud."  Sega Auto Sales, Inc. v. Flores (In re Flores), 535 B.R. 468, 481-82 (Bankr. D. Mass. 2015) (citing In re Spigel, 260 F.3d at 32).
>
> "A false representation can include a statement of future intention, such as a promise to act, but a promise to act is only a false representation if at the time the debtor made the promise he had no intention of performing."  In re Flores, 535 B.R. at 482 (citing Palmacci, 121 F.3d at 786-787).  A subsequent change of heart or intervening events will not render a sincere promise to act a false representation.  Palmacci, 121 F.3d at 787. The second element requires "intent to deceive, manipulate, or defraud," which may be met by establishing that the debtor knows or believes the representation is false, or that the representation was made recklessly.  Id.  Fraud may be inferred as a matter of fact from the totality of the circumstances.  Id. at 789.

Plumber's Edge, Inc. v. Veino (In re Veino), 2016 BNH 012, 9-10.

The California Complaint alleges that the Debtor and DWI made "false representations" when they represented to her that she "was paid in full on all outstanding sales services due to customers seizures, returns and amounts deducted for rent on the [property leased for Kirk's use]" and when the Debtor and DWI "improperly prepared false 1099 tax return documents … denoting she was paid in full for years 2009, 2010 and 2011."  The California Complaint further alleges that the Debtor and DWI "intended that [Kirk] rely on the representation to not pay" her; that she "reasonably relied on [Burrow's and DWI's] representation;" and that she was "harmed."  The California Complaint states further that Kirk's "reliance on [the Debtor's and DWI's] representation was a substantial factor in causing her harm" and that "[a]s a substantial factor and direct and proximate cause of the foregoing conduct by [the Debtor and DWI] … [Kirk] has suffered and will continue to suffer damages."

Comparing the necessary elements of a claim under § 523(a)(2)(A) and Kirk's allegations in the California Complaint, which Kirk contends the Court must accept as true due to the Debtor's default, it is clear that the two are not identical.  First, many of the allegations in the California Complaint regarding the Debtor's fraudulent conduct were based on "information and belief" and thus those allegations are insufficient to support a finding of fraudulent conduct.  Second, Kirk did not allege in the California Complaint that her reliance on the Debtor's false representations was "justifiable."  California law does not require a court to find that a plaintiff's reliance be justifiable in order to succeed on an intentional misrepresentation claim.  See Bigler-Engler v. Breg, Inc., No. D063556, 2017 WL 65411, at *33 (Cal. Ct. App. Jan. 6, 2017) ("To establish a claim for fraudulent misrepresentation, the plaintiff must prove: '(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the

9

defendant made the representation recklessly and without regard for its truth; (4) the defendant

intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on

the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's

representation was a substantial factor in causing that harm to the plaintiff.'") (quoting Graham

v. Bank of America, N.A., 226 Cal. App. 4th 594, 605-606 (2014)).[3]

Accordingly, the Court finds that the showing required in the California Court regarding

fraudulent conduct is not identical to the fraud required by § 523(a)(2)(A).  Because a claim for

intentional misrepresentation and a claim under § 523(a)(2)(A) to except a debt from discharge,

as one arising through Debtor's "false pretenses, a false representation, or actual fraud," do not

involve identical issues (since a § 523(a)(2)(A) claim involves a determination as to whether a

creditor's reliance was justifiable where an intentional misrepresentation claim in California does

not), the Court cannot apply collateral estoppel under these facts.

### b.  Actually Litigated and Necessarily Decided

The Debtor argues that the Default Judgment cannot have preclusive effect in this

proceeding, as the essential elements of a non-dischargeability claim under § 523(a)(2)(A) were

not litigated or determined by the California Court.  "In order for [a court] to conclude that the

issue had been actually litigated in the prior proceeding, [the court] must find that the court made

an express finding on the issue or [the court] must conclude that the issue was necessarily

decided in the prior proceeding."  Baldwin, 249 F.3d at 919.  Kirk is unable to establish these

additional elements either.  The Default Judgment is a form judgment.  It indicates nothing more

than that Kirk is granted judgment "by default."  The Default Judgment does not set forth any

findings or conclusions.  As the Ninth Circuit Court of Appeals has explained, "a court's silence

---

[3]  Note that in 1995 the United States Supreme Court held that § 523(a)(2)(A) requires "justifiable" not "reasonable" reliance.  Field v. Mans, 516 U.S. 59, 77 (1995).

concerning a pleaded allegation does not constitute adjudication of the issue." Harmon, 250 F.3d at 1247 (addressing the "actually litigated" limitation).  When there is no express finding with respect to fraud, courts cannot conclude that the state court considered and decided the issue. See id. at 1248

Further, the Default Judgment does not indicate whether judgment was being issued on only one of Kirk's claims or on all of Kirk's claims.  The prayer for relief in the California Complaint sought an "award of damages" caused by Burrow's and DWI's "breaches" of "contract" in the amount of $74,999.99.  This is the amount of damages the California Court awarded.  Thus, from the summary judgment record it is not clear whether the California Court actually or necessarily ruled on Kirk's claim for intentional misrepresentation.  The California Court awarded the exact amount that Kirk requested on her breach of contract claim. Accordingly, the California Court may have granted judgment only on that claim; therefore, it could have entered a default judgment against the Debtor without finding that he had made a false representation or committed fraud.  For that reason, Kirk cannot demonstrate that the California Court "necessarily decided" her intentional misrepresentation cause of action.  As the Bankruptcy Appellate Panel for the Ninth Circuit has indicated, "any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing issue preclusive effect; and nondischargeability actions are to be strictly construed in the debtor's favor." Tolotti, 2014 WL 4197847, at *1.

The Court therefore concludes that the collateral estoppel effect of the California Default Judgment is an insufficient basis for demonstrating that the debt owed by Burrows is non-dischargeable under § 523(a)(2)(A).  The California Court did not make any findings or conclusions that would be sufficient to support a non-dischargeability ruling.  At trial, the Plaintiff cannot rely upon the collateral estoppel effect of the Default Judgment but instead she

11

must supplement that judgment with evidence that will establish the elements of a claim under §

523(a)(2)(A).[4]

### 2.  523(a)(6)

Kirk contends that the eighth cause of action in the California Complaint for "intentional

infliction of emotional distress" is comparable to a claim under § 523(a)(6).  Again, Kirk must

establish the five threshold requirements under California law to apply collateral estoppel.  The

Debtor does not challenge that he was a defendant in Kirk's state court action or that the Default

Judgment was final before Kirk brought her non-dischargeability action.  Thus, no dispute exists

as to the fourth and fifth requirements for applying collateral estoppel.  Rather, the Court must

decide whether the first three requirements are met.

---

[4]  The Court notes that to prevail on a claim under § 523(a)(2)(A) for fraudulent misrepresentation a
creditor must demonstrate that there is a debt owed by the debtor to the creditor and that the debt at issue
arose as a result of the debtor's false misrepresentation.  See Husky Int'l Elecs., Inc. v. Ritz, 136 S. Ct.
1581, 1589 (2016) (citing Field v. Mans, 516 U.S. 59 (1995), for the proposition that "certain forms of
bankruptcy fraud require a degree of direct reliance by a creditor on an action taken by a debtor");
Lassonde v. Stanton (In re Stanton), 2010 BNH 006, 9 (explaining § 523(a)(2)(A) "requires a direct link
between the alleged fraud and the creation of the debt") (emphasis added); Fischbein v. Armstrong (In re
Armstrong), 1999 BNH 033, 6 (noting that a creditor must suffer harm as a "result" of the debtor's
misrepresentation).  Thus, Kirk will have to demonstrate that any false representation by the Debtor
caused her damages.

The Court notes that Kirk performed services pursuant to the terms of a contract.  Kirk does not allege
in the Bankruptcy Complaint that the contract contains any false statements.  Further, she does not allege
that there were any false statements before she commenced her services.  Rather, the Bankruptcy
Complaint alleges that the Debtor and his company failed to pay her what was due under the contract and
that they provided false accountings and 1099s after she performed her services.  By the time the
allegedly false accountings and 1099s were prepared, Kirk had already performed her services and
therefore these statements could not have caused her to perform services for which she was not paid.  It
seems unlikely that Kirk can prove that her services were "obtained by … false pretenses, a false
representation, or actual fraud" within the meaning of § 523(a)(2)(A).

Kirk performed services for DWI as a contractor and she was paid substantial sums for her services
($141,089.63 in commissions, according to the Bankruptcy Complaint).  The summary judgment record
does not support a finding that DWI and the Debtor had no intention of performing the contract or paying
her money for her services.  Rather, as Burrows points out, it appears a dispute arose as to exactly how
much Kirk should be paid, as some commissions reportedly were unearned when the sales fell through or
the goods were "turned back" at the United States border.

### a.  Identical Issue

Section 523(a)(6) specifically excepts from discharge "any debt . . . for willful and malicious injury by a debtor to another entity or the property of another entity."  11 U.S.C. § 523(a)(6).  To prevail on a § 523(a)(6) cause of action, a creditor must prove the following elements:

1. the creditor suffered an injury;
2. the injury was the result of the debtor's actions;
3. the debtor intended to cause the injury or there was a substantial certainty that the injury would occur; and
4. the debtor had no just cause or excuse for the action resulting in injury.

B.B. v. Bradley (In re Bradley), 466 B.R. 582, 587 (B.A.P. 1st Cir. 2012) (quoting Hermosilla v. Hermosilla (In re Hermosilla), 430 B.R. 13, 22 (Bankr. D. Mass. 2010)); see Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998).  Kirk contends that the eighth cause of action in the California Complaint for "intentional infliction of emotional distress" is comparable to her claim under § 523(a)(6).  Upon review, the Court finds that they are not.

In her Bankruptcy Complaint, with respect to her claim under § 523(a)(6), Kirk alleges simply that "Defendant willfully and maliciously converted personal property of Plaintiff. Plaintiff had an ownership interest in the rightfully earned commissions from the sale of Defendant's products.  Defendants wrongfully converted Plaintiff's proceeds by keeping them for themselves and not giving them to Plaintiff."

In contrast, in claim eight in the California Complaint, Kirk does not focus on recovering money for unpaid commissions.  Instead, Kirk contends that the Debtor and DWI failed to timely pay her in full, they falsely represented that they had paid her in full, they created fraudulent correspondence and accountings, and they filed fraudulent 1099 tax documents.  She alleges that this activity constituted "outrageous conduct surpassing the bounds of decency" as such conduct was "done knowing[ly], intentional[ly], and willfully with the intent and/or reckless disregard of

13

the probability of causing Kirk severe emotional distress" and "done with the inten[t] to inflict

injury or engaged in with the realization that injury is directed at Kirk and will result to Kirk."

The California Complaint further alleges that the Debtor's and DWI's conduct proximately

caused Kirk "severe mental anguish and emotional and physical distress."  Kirk alleged that the

Debtor's and DWI's conduct "was malicious and oppressive" as it was done "willful[ly],

knowingly and [in] conscious disregard" of Kirk's rights and with "intent to subject Kirk to cruel

and unjust hardship and cause Kirk severe emotional distress."  Kirk failed to quantify the exact

amount of her damages in this count of her complaint, indicating only that they exceed

$100,000.00.

Thus, the focus of Kirk's § 523(a)(6) claim is that the Debtor converted Kirk's

commissions for himself, which somehow resulted in Kirk suffering a "willful and malicious

injury,"[5] while the focus of Kirk's intentional infliction of emotional distress claim is that she

was emotionally harmed by the Debtor's and DWI's false statements.  The Court cannot find that

the issue sought to be precluded from re-litigation in this Court is identical to that decided in the

former proceeding by the California Court:  a § 523(a)(6) claim based on conversion is not the

same as intentional infliction of emotional distress.

### b.  Actually Litigated and Necessarily Decided

As discussed previously, in order for the Court to conclude that an issue was actually

litigated in the California Court, the Court must find that the California Court made an express

finding on the issue or the Court must conclude that the issue was necessarily decided in the

---

[5]  Kirk has alleged that Burrows converted her property.  The Court notes that "a willful and malicious injury does not follow as [a matter] of course from every act of conversion."  Breed's Hill Ins. Agency v. Fravel (In re Fravel), 485 B.R. 1, 19 (Bankr. D. Mass. 2013) (quoting Doherty v. Coccia (In re Coccia), 351 B.R. 17, 21 (Bankr. D.R.I. 2006)).  Rather, courts must consider the circumstances of a particular situation in order to determine whether the conversion was "willful and malicious" within the meaning of § 523(a)(6).  Fravel, 485 B.R. at 19 (citing Coccia, 351 B.R. at 21).

prior proceeding.  See Baldwin, 249 F.3d at 919.  As noted above, the Default Judgment is a form judgment.  It indicates nothing more than that Kirk is granted judgment "by default."  The Default Judgment does not set forth any findings or conclusions.  It does not contain any express finding as to whether Kirk suffered any emotional distress.  Accordingly, the Court cannot conclude that the issue was actually litigated (even assuming the Court could find that identical issues were being litigated, which the Court is not able to find, as discussed above).

Further, the Default Judgment does not indicate whether judgment was issued on only one of Kirk's claims or on all of Kirk's claims.  Again, the prayer for relief in the California Complaint sough an "award of damages" caused by Burrow's and DWI's "breaches" of "contract" in the amount of $74,999.99.  This is the amount of damages the California Court awarded.  Thus, it is not clear from the summary judgment record that the California Court actually or necessarily ruled on Kirk's claim for intentional infliction of emotional distress.  Since the Court must resolve any reasonable doubt as to what was decided by a prior judgment against allowing issue preclusive effect, the Court concludes that it cannot apply collateral estoppel to Kirk's § 523(a)(6) claim.

## IV.  CONCLUSION

For the reasons outlined above, the Court finds that Kirk has not sustained her burden of establishing the requirements for applying collateral estoppel.  Accordingly, she has not demonstrated that she is entitled to summary judgment in her favor on her non-dischargeability claims under § 523(a)(2)(A) and (a)(6).  The Court will issue a separate order denying the Motion in accordance with Federal Rule of Bankruptcy Procedure 7056.  The Court will reset this case for trial, at which the Plaintiff will have to establish what amount of the debt, if any,

15

owed by the Defendant to the Plaintiff (as set forth in the Default Judgment) should be excepted

from discharge under § 523(a)(2)(A) or (a)(6).

     ENTERED at Manchester, New Hampshire.


Date:   February 2, 2017                 /s/ Bruce A. Harwood
                                             Bruce A. Harwood
                                             Chief Bankruptcy Judge

16